**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **MIKAL ORTLIEF** and **JOHN ORTLIEF**, | Case No. 3:24-cv-01962-IM |
| Plaintiffs, | **OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **SUNPOINT PUBLIC ADJUSTERS, INC.**, | |
| Defendant. | |

George A. McCoy, Warren Allen LLP, 10535 NE Glisan St, Suite 200, Portland, OR 97220. Attorney for Plaintiffs.

Elizabeth Elkington & George S. Pitcher, Wilson Elser Moskowitz Edelman & Dicker LLP, 805 SW Broadway, Suite 2460, Portland, OR 97205. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiffs Mikal and John Ortlief ("Plaintiffs") bring this action against Defendant

SunPoint Public Adjusters, Inc. ("Defendant" or "SunPoint"), for contractual violations.

Plaintiffs hired Defendant to assist in recovering from their insurer, Liberty Mutual, after a tree

fell on their house. Plaintiffs bring three claims: 1) breach of contract, 2) failure to mitigate

PAGE 1 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

damages, and 3) breach of fiduciary duties. Now before this Court is Defendant's Motion for Summary Judgment ("MSJ"), ECF 36. Plaintiffs filed a response in opposition (Opp'n), ECF 44, to which Defendant replied ("Reply"), ECF 45. For the reasons set forth below, this Court denies Plaintiffs' evidentiary requests and finds Defendant is entitled to summary judgment on all three claims. Defendant's Motion for Summary Judgment, ECF 36, is granted in full.

## BRIEF BACKGROUND

During a windstorm on January 27, 2022, a large portion of a fir tree fell onto Plaintiffs' house, damaging the roof. Joint Statement of Agreed and Disputed Facts ("JSOF"), ECF 53 at 2. Plaintiffs filed a claim with their homeowner's insurance carrier, Liberty Mutual. *Id.* Effective February 1, 2022, Plaintiffs hired Defendant to assist with insurance claim recovery. Declaration of Elizabeth Elkington ("Elkington Decl."), Ex. 5, ECF 38-5 at 3. In return, Plaintiffs agreed to pay Defendant ten percent of recovered insurance proceeds. *Id.*; JSOF, ECF 53 at 3. Defendant negotiated $156,659.56 in insurance payments from Liberty Mutual to Plaintiffs. JSOF, ECF 53 at 3.

In their contract, the parties agreed to the following scope of work:

> SUNPOINT PUBLIC ADJUSTERS, INC. will make its best effort to provide the Insured with expert advice, opinions, recommendations to ensure the best chances of reaching an amicable settlement of the claim that will maximize every aspect of your insurance recovery in the shortest amount of time necessary. SUNPOINT PUBLIC ADJUSTERS, INC. will package, process and make the claim on your behalf so that you can do other things necessary to maintain your normal lifestyle.

Elkington Decl., Ex. 5, ECF 38-5 at 2. The parties' contract specifically required Defendant to (a) complete a policy review, (b) conduct a structural estimate, (c) compare estimates/bids, (d) complete a detailed personal property inventory, and (e) assist in establishing a temporary living situation. *Id.*

The contract included a provision concerning contractors and other vendors:

PAGE 2 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

> SUNPOINT PUBLIC ADJUSTERS, INC. may bring in licensed Contractor(s) to assist to measure the loss and/or to assist the Insured in mitigating its loss. It is for the Insured to decide whether to hire any third party such as a licensed contractor to do any work required. The Insured understands that SUNPOINT PUBLIC ADJUSTERS, INC. shall not be liable for damage of any kind resulting from, arising out of, or in any way related to the use of any third party and SUNPOINT PUBLIC ADJUSTERS, INC. shall be held harmless by the Insured should damages be caused by any third party hired by the Insured.

*Id.* Plaintiffs also agreed Defendant "shall not be liable for any claims, complaints, malperformance, schedule delays or the like, alleged to arise from or in connection with any third party's performance of its obligations under this Agreement, unless arising from Consultant's misconduct, inadequate competency, or negligence." *Id.*

The contract required Plaintiffs' written approval for Defendant to make a claim on their behalf. *Id.* Plaintiffs also were required to approve Defendant's commencement of settlement negotiations with Liberty Mutual. *Id.* Defendant agreed to "communicate to [Plaintiffs] any and all forms (such as a Proof of Loss) required by [Liberty Mutual] for [Plaintiffs] to sign and will make recommendations to [Plaintiffs] accordingly." *Id.*[1]

In February 2022, SunPoint's representative, Dudley Gaouette, conducted a site visit of Plaintiffs' home to assess the damage. JSOF, ECF 53 at 3. On February 8, 2022, Liberty Mutual issued a $21,942.51 check to Plaintiffs for initial home repairs, which was never deposited. *Id.* On February 9, 2022, Defendant "engaged Venturi Restoration [("Venturi")] to conduct an initial assessment and to install tarping on Plaintiffs' roof to protect the property from damage." *Id.*;

---

[1] Defendant filed a declaration from its employee, Mr. Dudley Gaouette ("Gaouette Decl."), ECF 37, in support of its summary judgment motion. That declaration is subject to evidentiary challenges from Plaintiffs; this Court addresses those issues below. In that declaration, Mr. Gaouette states that "[d]espite many conversations, it was not until October 3, 2022, that Plaintiffs agreed for me to submit an initial estimate for pack-out, storage, and demolition to their insurer along with options for alternative living arrangements during construction." Gaouette Decl., ECF 37 ¶ 9.

PAGE 3 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Declaration of Dudley Gaouette ("Gaouette Decl."), ECF 37 ¶ 3. On February 10, 2022, Defendant informed Liberty Mutual that Defendant would be representing Plaintiffs regarding their insurance claim. *Id.* On March 2, 2025, Venturi verified that they were working toward an asbestos survey of the home, and on March 29, "Venturi confirmed that the home tested negative for asbestos and provided an initial assessment of the necessary demolition work." JSOF, ECF 53 at 3; Elkington Decl., Ex. 4, ECF 38-4 at 21. On April 7, 2022, Venturi provided demolition and pack out estimates, and by April 8, 2022, Venturi had fully re-tarped Plaintiffs' roof. Gaouette Decl., ECF 37 ¶ 6; JSOF, ECF 53 at 3.

From February 8, 2022 to May 31, 2023, Liberty Mutual issued several checks to Plaintiffs, Plaintiffs' mortgage company (HomeStreet Bank), and associated vendors related to Plaintiffs' claim. JSOF, ECF 53 at 3–5. Defendant "never assumed control over, nor deposited, nor cashed any of Plaintiffs' insurance claim proceeds." *Id.* at 5.

Plaintiffs contracted with Paul Davis Restoration ("Paul Davis") for house repairs. *Id.* Plaintiffs issued payments totaling $77,825.60 to Paul Davis through their HomeStreet Bank. *Id.* at 5–6. Before issuing the final check on December 18, 2024, HomeStreet Bank conducted an onsite inspection to determine that repairs had been made. *Id.* at 6.

On April 13, 2023, Plaintiffs terminated their contractual relationship with Defendant. *Id.* at 5. Following that termination, Plaintiffs assumed direct control of their insurance claim. *Id.* Plaintiffs never paid Defendant. *Id.* at 3. From May 6 to May 31, 2023, Liberty Mutual issued four checks totaling $11,166.34 to Plaintiffs and vendors. *Id.* at 5. Liberty Mutual issued its last check to Plaintiffs on May 31, 2023. *Id.*

Plaintiffs originally filed this case in Multnomah County Circuit Court on April 16, 2024. ECF 1 at 5–11. Plaintiffs filed their First Amended Complaint on October 22, 2024, adding

PAGE 4 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Liberty Mutual as a defendant. *Id.* at 28–34. The case was removed to this Court by Liberty Mutual on November 22, 2024. *Id.* at 4. Liberty Mutual was dismissed from the case pursuant to Plaintiffs' notice of voluntary dismissal. Order Dismissing Defendant Liberty Mutual Insurance Co. and Denying Motion to Dismiss as Moot, ECF 12. After this Court granted leave, Plaintiffs filed their Second Amended Complaint ("SAC"), ECF 27, on September 23, 2025.

## STANDARDS

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017) (citing Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once that burden is satisfied, the burden shifts to the non-moving party to set out specific facts showing a genuine issue for trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 324).

A party must be able to support the facts it puts forth with evidence that would be admissible at trial. *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment," and "a scintilla of evidence is not enough to create a genuine issue of material fact in order to preclude summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citation modified).

PAGE 5 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**DISCUSSION**

Defendant moves for summary judgment on all three claims. First, this Court addresses Plaintiffs' evidentiary objections. This Court concludes that Mr. Gaouette's declaration is admissible and Plaintiffs' inability to depose Mr. Gaouette is entirely due to the conduct of Plaintiffs' counsel. Next, this Court addresses Plaintiffs' breach of contract claim and finds that Defendant is entitled to summary judgment because there is no triable issue on the damages element or whether Defendant breached. Then, this Court turns to Plaintiffs' failure to mitigate damages claim and finds it fails as a matter of law, as failure to mitigate is not a standalone claim under Oregon law. Finally, this Court evaluates Plaintiffs' breach of fiduciary duty claim and finds that Defendant is entitled to summary judgment due to a lack of fiduciary relationship between Plaintiffs and Defendant.

## A. Evidentiary Issues

Before addressing the merits of Defendant's motion, Plaintiffs raise two evidentiary issues that need to be addressed: the admissibility of Mr. Gaouette's declaration, and Plaintiffs' purported inability to depose Mr. Gaouette.

### 1. Admissibility of Mr. Gaouette's Declaration

In support of its summary judgment motion, Defendant filed a declaration from its employee, Dudley Gaouette. Gaouette Decl., ECF 37. Mr. Gaouette is a public adjuster who worked with Plaintiffs on their insurance claim. *Id.*; *see* JSOF, ECF 53 at 3.

Although Plaintiffs' argument is difficult to follow, Plaintiffs begin with the basic premise that evidence supporting summary judgment must be admissible. Opp'n, ECF 44 at 4. Plaintiffs then argue Mr. Gaouette's statements "regarding the condition of the Plaintiffs['] home and Mr. Orlief's [sic] telephone conversations are clearly meant to prejudice the court." *Id.*

PAGE 6 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(citing Gaouette Decl., ECF 37 ¶¶ 2, 9). Plaintiffs then state that declarations must be made based on personal knowledge and set forth such facts as would be admissible in evidence. *Id.* Finally, Plaintiffs argue "[s]tatements of this nature are the very foundation of Plaintiffs['] assertion that this is a factual dispute requiring a judicial finding or trial and Summary Judgment should be denied." *Id.* In reply, Defendant argues Mr. Gaouette's declaration is admissible evidence because it is supported by his personal knowledge. Reply, ECF 45 at 12. Also, Defendant directs this Court to Exhibit 7 (an audio recording of a conversation between Plaintiffs and Mr. Gaouette, ECF 40), which "provides context for the conversations undertaken between the parties." *Id.*

As a threshold matter, Plaintiffs did not comply with the procedural requirements of Local Rule 56-1. "[A] party must assert any evidentiary objections in its response . . . memorandum" and comply with "the certification requirement of LR 7-1(a)." L.R. 56-1(b). Plaintiffs did not include a Local Rule 7-1(a) certification in their response. *See* Opp'n, ECF 44 at 1.

Under Federal Rule of Civil Procedure 56(c)(4), affidavits or declarations may be used to support a motion if they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Mr. Gaouette's declaration is made based on his personal knowledge of his conversations with Plaintiffs and what he observed at Plaintiffs' home. The parties stipulate that shortly after Defendant was retained, Mr. Gaouette conducted a site visit. JSOF, ECF 53 at 3. In his declaration, Mr. Gaouette recounts what he observed when he visited Plaintiffs' home in February 2022. Gaouette Decl., ECF 37 ¶ 2 ("The home was in a state of disrepair that appeared to predate the tree strike."). Mr. Gaouette also recounts what he recalled from his weekly phone

PAGE 7 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

conferences with Plaintiffs, *id.* ¶ 9 ("The phone conferences often included vulgar and

inappropriate language used by John Ortlief and directed towards myself and Liberty Mutual."),

which is corroborated by the audio recording, Exhibit 7, ECF 40. Accordingly, this Court finds

Mr. Gaouette's statements comply with Rule 56(c)(4) and are admissible. This Court will

therefore consider Mr. Gaouette's declaration in evaluating the merits of Defendant's motion.

### 2. Opportunity to Depose Mr. Gaouette

Plaintiffs have not filed a motion to compel in this case. However, in the conclusion of

their response in opposition to summary judgment, Plaintiffs include the following paragraph:

> Plaintiffs have not had an opportunity to depose Mr. Dudley Gaouette of [sic] any other employee of either SunPoint or Liberty Mutual.[2] In fact, a request was sent via email to Ms. Elkington with a Notice of Deposition for Mr. Gaouette in which she replied that she would file a Motion to Quash. (Exhibit 3[3]) In absence of denying the motion, Plaintiffs respectfully ask the court [to] allow time to obtain affidavits or declarations pursuant to FRCP 56(4)(d)(2).

Opp'n, ECF 44 at 5. Defendant replied that this was "patently false, is a blatant

misrepresentation to the court, and the only purpose for this misrepresentation is to delay these

proceedings." Reply, ECF 45 at 2. Defendant seeks "attorney fees and costs associated with

responding and setting forth information to support the allegation that this was made in bad faith

and as an attempt only to delay proceedings" and that "the declaration and the corresponding

information contained in the response be stricken." *Id.* Plaintiffs have not sought to respond to

this allegation. *See* L.R. 56-1(b).

---

[2] Liberty Mutual is no longer a party to this action. Order Dismissing Liberty Mutual, ECF 12. Plaintiffs do not explain how or why SunPoint should be penalized for third-party Liberty Mutual's alleged conduct. Plaintiffs did not file a motion to compel.

[3] This appears to be a typographical error. The email thread Plaintiffs provide is Exhibit 4. Opp'n, Ex. 4, ECF 44-4.

PAGE 8 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Plaintiffs' purported inability to depose Mr. Gaouette (or any other employees of SunPoint) is entirely due to Plaintiffs' counsel. Plaintiffs' argument is, at best, misleading.

Plaintiffs did not seek to depose Mr. Gaouette until months after the close of fact discovery. The original deadline to complete all fact discovery in this case was July 28, 2025. Scheduling Order, ECF 16. On September 19, 2025, this Court extended fact discovery for *Defendant only* by 30 days. Order Granting Leave to File Amended Complaint, ECF 26. This Court extended fact discovery after granting Plaintiffs' opposed request to file an amended complaint. *Id.* Plaintiffs did not request to take any depositions of Defendant's employees until November 25, 2025.[4] Declaration of Elizabeth Elkington in support of Reply ("Elkington Reply Decl."), Ex. 6, ECF 46-6 at 2, 6. On December 5, 2025, Plaintiffs' counsel sent a deposition notice, and Defense counsel responded that she would file a motion to quash. *Id.* at 8–9. Plaintiffs' counsel then requested alternative dates for Mr. Gaouette's deposition. *Id.* at 8. Defense counsel responded that once the discovery cutoff has passed, Plaintiffs would need to seek leave from this Court, inquired whether Plaintiffs would file a motion, and offered availability for Mr. Gaouette's deposition in January or February 2026. *Id.* Plaintiffs did not file a motion to extend discovery. Per Defendant, Plaintiffs' counsel has not coordinated any dates for Mr. Gaouette's deposition despite being offered availability in January or February. Reply, ECF 45 at 5.

In their response filed December 29, 2025, Plaintiffs selectively produced emails. Opp'n, Ex. 4, ECF 44-4. Plaintiffs provided their counsel's November 25, 2025 email, their counsel's

---

[4] On December 8, 2025, defense counsel wrote that she previously "suggested depositions occur in June and July but never received any response regarding dates [and] also suggested that his deposition take place in October when Mr. Gaouette was in town for Plaintiffs' depositions." Elkington Reply Decl., Ex. 6, ECF 46-6 at 7.

PAGE 9 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

December 4 and 5 emails following up, and defense counsel's response that she would file a motion to quash the deposition notice. *Id.* Plaintiffs omitted the full context for those emails and made no attempt to correct the record after Defendant's reply was filed.

Plaintiffs' request to "allow time to obtain affidavits or declarations pursuant to FRCP 56(4)(d)(2) [sic]" is denied. Opp'n, ECF 44 at 5. Further, in light of this Court's ruling on this summary judgment motion, this Court declines to proceed with additional briefing on this issue and dismisses Defendant's request for sanctions. Plaintiffs' counsel is cautioned that they have a duty of candor to this Court and failure to adhere to their ethical obligations may result in sanctions in future cases.

## B. Breach of Contract Claim

Plaintiffs allege that Defendant materially breached the contract because "the material purpose of th[e] contract has not been achieved." SAC, ECF 27 ¶ 33. Specifically, Plaintiffs allege Defendants delayed communicating with Liberty Mutual, delayed inquiring into temporary housing, failed to communicate accurate information to Plaintiffs regarding their claim, delayed making claims for additional living expenses, and made inaccurate assurances about what was covered, resulting in damages. *Id.* ¶¶ 28–34.

For the reasons explained below, this Court finds that Defendant is entitled to summary judgment on this claim because there is no genuine dispute of material fact as to damages or Defendant's breach.

### 1. Legal Standards

Under Oregon law, a plaintiff proves a breach of contract claim by showing "the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Slover v. Or. State Bd. of Clinical Soc.*

PAGE 10 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Workers*, 144 Or. App. 565, 570 (1996) (citation modified). "[W]hen a breach or nonperformance of a promise by one party to a bilateral contact is *material*, it discharges the other party from a duty to perform under the contract." *Crain v. Siegel*, 151 Or. App. 567, 573 (1997) (emphasis added). "If a party to a contract materially fails to perform under the contract, then the other contracting party must choose either to continue or to refuse to accept performance from the breaching party." *C & K Mkt., Inc. v. Roccasalva*, 246 Or. App. 277, 281 (2011).

As to the last element, "[t]he purpose of the remedy of damages for a breach of contract claim is to compensate the plaintiff for the loss incurred as a result of the defendant's breach." *Zehr v. Haugen*, 318 Or. 647, 658 (1994). A damages remedy in contract can only "plac[e] the aggrieved party in the position that he or she would have occupied had the contract been fully performed." *Id.* Thus, "noneconomic damages are generally not recoverable on a breach of contract claim." *Moser v. DKN Ind.*, 191 Or. App. 346, 349 (2004); *see also Gutta v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 3:22-cv-01145-HZ, 2023 WL 2709646, at *7 (D. Or. Mar. 29, 2023) ("Under Oregon law, damages for emotional distress and punitive damages are unavailable in an action for breach of contract.").

## 2. Damages Analysis

Dispositive here, Defendant argues this claim fails because Plaintiffs have produced no evidence of damages due to SunPoint's conduct during the contractual period of February 1, 2022 to April 13, 2023. MSJ, ECF 36 at 15–16. The crux of Defendant's argument is that Plaintiffs cannot satisfy the damages element because Defendant negotiated a large, sufficient claim recovery, and Plaintiffs have provided no evidence to rebut. *See id.* As explained below, this Court finds Defendant is entitled to summary judgment on this claim because there is no evidence that Plaintiffs experienced any damages from Defendant's acts or omissions.

PAGE 11 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant argues there are no damages here because Plaintiffs received over $150,000 from their insurer as a result of Defendant's performance under the contract. Defendant was tasked with "provid[ing] [Plaintiffs] with expert advice, opinions, recommendations to ensure the best chances of reaching an amicable settlement." Elkington Decl., Ex. 5, ECF 38-5 at 2. Before Plaintiffs terminated the contract on April 13, 2023, Defendant negotiated $156,659.56 in insurance proceeds, which does not count all costs paid by Liberty Mutual directly to vendors. JSOF, ECF 53 at 3. Plaintiffs never paid SunPoint, despite the contract requiring them to pay ten percent of their recovery. *Id.*; Elkington Decl., Ex. 5, ECF 38-5 at 3. After May 2023, Plaintiffs' insurer did not issue any further proceeds to Plaintiffs. JSOF, ECF 53 at 5. The parties stipulated that as of an unknown date, there is still $34,212.33 remaining in Plaintiffs' mortgage account for insurance funds. *Id.* In moving for summary judgment, Defendant cites the estimate from Paul Davis restoration that approximately $50,975.19 could have accomplished core restoration of Plaintiffs' home. MSJ, ECF 36 at 15 (citing Elkington Decl., Ex. 3, ECF 38-3).[5] Thus, Defendant argues "Plaintiffs offer no competent, non-speculative measure of damages tied to any SunPoint breach" and that "there is no evidence to support claims that Plaintiffs sustained damages related to their contract with SunPoint." MSJ, ECF 36 at 6, 15.

Plaintiffs' response does not address Defendant's damages argument. Plaintiffs provide no evidence of economic damages.[6] In their opposition, Plaintiffs summarily argue that "[t]he

---

[5] Plaintiffs do not contest this characterization of the core restoration repair estimate. *See generally* Opp'n, ECF 44. In total, Plaintiffs' mortgage company issued Paul Davis restoration $77,825.60. JSOF, ECF 53 at 5–6. The final check to Paul Davis was issued on December 18, 2024, after Plaintiffs had terminated the contract. *Id.* at 6.

[6] In the Joint Statement of Agreed and Disputed Facts, Plaintiffs contend that [SunPoint's] delays caused them to incur out of pocket costs for alternative living in the amount of $30,000." JSOF, ECF 53 at 7. However, Plaintiffs never produced any evidence to support this assertion.

PAGE 12 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

emotional and financial distress caused to plaintiffs because of SunPoint[']s negligence is considerable," Opp'n, ECF 44 at 3, but do not cite to any evidence of economic damages. Plaintiffs also argue that "[t]o date the roof repair has still not been completed, and the home remains damaged, uninhabitable, and vulnerable to further structural damage." Opp'n, ECF 44 at 2. This is also unsupported by evidence. Further, Defendant cannot be held liable for any damages "to date." Plaintiffs terminated the contractual relationship on April 13, 2023, cutting off Defendant's obligations to Plaintiffs. JSOF, ECF 53 at 6; *see* Elkington Decl., Mikal Ortlief Deposition, Ex. 1, Tr. 72:19–25, ECF 38-1 at 13 (testifying that she had no expectations Defendant would do anything further in relation to the insurance claim after termination). At summary judgment, in response to Defendant's evidence, Plaintiffs needed to provide evidence of damages because of SunPoint's acts or omissions during the contractual period of February 1, 2022 to April 13, 2023. *See Celotex*, 477 U.S. at 322 (holding that summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden on proof at trial"). Plaintiffs' response amounts to "mere allegation and speculation" and "do[es] not create a factual dispute for purposes of summary judgment." *Nelson*, 83 F.3d at 1081–82.

The only *evidence* Plaintiffs provide in response to Defendant's motion is brief excerpts of John Ortlief's deposition. Mr. Ortlief testified that he felt he was being misled by Mr. Gaouette, Mr. Gaouette was difficult to get ahold of, he thought SunPoint's plans were not comprehensive enough, and Mr. Gaouette told him that insurance funds could be used for a metal roof. Opp'n, Ex. 2, Tr. 18:14–19:12, 20:12–21:5, ECF 44-2 at 1–4. None of this testimony speaks to damages.

Puzzlingly, Plaintiffs argue that Defendant was negligent and rely on two Oregon cases concerning negligence claims against insurers. Opp'n, ECF 44 at 3–4 (citing *Moody v. Or. Cmty. Credit Union*, 371 Or. 772 (2023); *Mohammad v. Liberty Ins. Corp.*, No. 1:23-CV-000691-CL, 2024 WL 4627462 (D. Or. Oct. 30, 2024)). Plaintiffs bring a claim for breach of contract, not a tort action for negligence. *See* SAC, ECF 27 ¶¶ 28–34. In *Moody*, the Oregon Supreme Court held a plaintiff could bring an emotional distress claim based on a life insurer's conduct. 371 Or. at 806. However, *Moody*'s holding concerned a common law negligence claim for emotional distress. *Id.* at 776. This is inapplicable to these facts because Plaintiffs have not brought a negligence claim. *See generally* SAC, ECF 27. Defendant also never issued an insurance policy to Plaintiffs. In *Mohammad*, the court held that a plaintiff's claim for emotional distress damages against an insurer could survive a motion to dismiss. 2024 WL 4627462, at *3. However, like *Moody*, this case is inapplicable because Plaintiffs have not brought a negligence claim and Defendant SunPoint is not an insurer. This Court is bound to apply the black-letter contract law, as restated in *Moody* itself, that "emotional distress damages are not recoverable" in "a breach of contract action." 371 Or. at 799.

Plaintiffs did not produce evidence of economic damages due to SunPoint's alleged breach. A plaintiff cannot establish "liability without a corresponding finding of damages." *Spectra Novae, Ltd. v. Waker Assocs., Inc.*, 140 Or. App. 54, 60 (1996). "Given the lack of material opposition, coupled with well-settled precedent dictating that [Plaintiffs] must have a valid claim for damages," this Court finds Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim. *Atl. Specialty Ins. Co. v. Or. Sch. Bds. Ass'n Prop. & Cas. Coverage for Educ. Tr.*, 649 F. Supp. 3d 998, 1014 (D. Or. 2022).

### 3. Breach Analysis

Moreover, Defendant argues it fully performed its contractual obligations by documenting and presenting the claim, negotiating with the insurer, and obtaining payments. *See* MSJ, ECF 36 at 11–13. As explained below, this Court finds that there is no genuine dispute of material fact as to whether Defendant breached.

In addition to the evidence of Plaintiffs' claim recovery described above, Defendant supports its motion with evidence that it did not breach the contract. Among other facts, Defendant provided evidence that it immediately began work on Plaintiffs' insurance claim, attempted to assist Plaintiffs in arranging temporary housing, and that Plaintiffs withheld consent for Defendant to negotiate with Liberty Mutual.

Defendant provided unrebutted evidence that it began work on Plaintiffs' claim shortly after being retained; the parties stipulate to most of these facts. Shortly after the contract was signed, Mr. Gaouette conducted a site visit of Plaintiffs' home. JSOF, ECF 53 at 3. Mr. Gaouette "informed Plaintiffs of the process of submitting a claim to the insurer including that the policy governs what is and is not covered." Gaouette Decl., ECF 37 ¶ 2. On February 8, 2022, Liberty Mutual issued a $21,942.51 check for initial home repairs that Plaintiffs never deposited. JSOF, ECF 53 at 3. On February 9, 2022, Defendant retained contractor Venturi to tarp Plaintiffs' roof and assess damages. Elkington Decl., Ex. 4, ECF 38-4 at 13; Gaouette Decl., ECF 37 ¶ 3. On February 10, 2022, Defendant informed Liberty Mutual that it would be representing Plaintiffs regarding their insurance claim. JSOF, ECF 53 at 3. On March 29, 2022, Venturi confirmed the home tested negative for asbestos and provided an initial assessment of necessary demolition work. *Id.* On April 7, 2022, Venturi provided demolition and pack out estimates, and by April 8,

PAGE 15 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

2022, Venturi had fully re-tarped Plaintiffs' roof. Gaouette Decl., ECF 37 ¶ 6; JSOF, ECF 53 at 3.

Defendant provided evidence that Defendant attempted to assist Plaintiffs in establishing a temporary living situation. In their initial conversation, "Plaintiffs expressed [to Mr. Gaouette] that they were not interested in alternative living at that time." Gaouette Decl., ECF 37 ¶ 2. Between June 5, 2022 and August 2, 2022, Mr. Gaouette attests that he Mr. Gaouette "engaged in a series of phone conferences with the Plaintiffs regarding their insurance claim" and that "Plaintiffs repeatedly stated that they did not want me to submit anything to Liberty Mutual unless they would receive a lump sum payment that they could utilize in any manner they chose." *Id.* ¶¶ 8–9. Mr. Gaouette explained to Plaintiffs that despite their insistence, "insurers typically pay for phases of the claim," not a lump sum. *Id.* ¶ 8. By October 2022, Plaintiffs still "did not actually want to utilize alternative housing, pack-out, and storage costs, [and] they insisted that Liberty Mutual needed to pay them upfront for costs and not for rentals." *Id.* ¶ 10. On October 15, 2023, Mr. Ortlief wrote that Plaintiffs "have absolutely no intention to rent temporary housing." Elkington Decl., Ex. 4, ECF 38-4 at 30. Plaintiffs do not respond to this evidence in their response brief. *See generally* Opp'n, ECF 44.

Relatedly, Plaintiffs withheld providing written consent for Defendant to negotiate with their insurer, Liberty Mutual. The parties' contract is explicit that Plaintiffs needed to provide written approval for Defendant to make a claim on their behalf with Liberty Mutual. Elkington Decl., Ex. 5, ECF 38-5 at 2. Mr. Gaouette attests that "[d]espite many conversations, it was not until October 3, 2022, that Plaintiffs agreed for me to submit an initial estimate for pack-out, storage, and demolition to their insurer along with options for alternative living arrangements

PAGE 16 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

during construction." Gaouette Decl., ECF 37 ¶ 9. Again, Plaintiffs do not respond to this evidence in their response brief. *See generally* Opp'n, ECF 44.

Plaintiffs' response does not make any argument regarding the existence of a genuine dispute of material fact as to whether Defendant breached any contractual obligation. As discussed above, the response brief cites irrelevant tort caselaw and makes broad statements about Defendant's conduct that is unsupported by any evidence. Plaintiffs' proffered evidence is sparse and does not establish a breach by Defendant. Mr. Ortlief's testimony that "[Plaintiffs] were being, [he] felt, misled by [Mr. Gaouette]" and that he thought Defendant's plans were not comprehensive enough, Opp'n, Ex. 2, Tr. 18:17–18, 18:22–19:13, ECF 44-2 at 1–2, are personal opinions that do not create any genuine dispute fact. Further, Mr. Ortlief's view that Mr. Gaouette "was very hard to get ahold of for the entire process here," *id.*, Tr. 19:10–12, ECF 44-2 at 2, is unsupported by the record. But even assuming that to be true, Plaintiffs have not connected any difficulty in reaching Mr. Gaouette to any material breach of Defendant's contractual obligations. Finally, even accepting as true Mr. Ortlief's testimony that Mr. Gaouette told him insurance funds could be used for a metal roof, *id.*, Tr. 20:12–21:5, ECF 44-2 at 3–4, it is unclear how that fact is relevant, much less material. In light of the absence of any genuine dispute of material fact regarding Defendant's alleged breach, this Court finds Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.

## C. Failure to Mitigate Damages Claim

Plaintiffs make various allegations in a "Failure to Mitigate Damages" section of the operative complaint. SAC, ECF 27 ¶¶ 35–39. Plaintiffs allege that Defendant "delayed communications with the insurer," provided "inaccurate advice," and "[f]ail[ed] to communicate with the insurer in a timely manner." *Id.* ¶¶ 36–38. Plaintiffs allege that as a result of Defendant

PAGE 17 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

"fail[ing] to prevent or mitigate additional damage to the structure, Plaintiffs incurred damages through loss of use of their home, and additional repair costs." SAC, ECF 27 ¶ 39.

Defendant argues that this claim fails as a matter of law because "Oregon law treats mitigation as a limitation on damages, not as a standalone claim" and thus, "cannot support liability or an award independent of a substantive breach." MSJ, ECF 36 at 13. Defendant also argues Plaintiffs' claim fails for two other independent reasons this Court declines to address. *Id.* at 13–14 (arguing the contract's plain language bars damages on a failure to mitigate claim and "even if this Court were to consider mitigation concepts, they point away from liability"). Plaintiffs do not address any of these arguments in response. *See generally* Opp'n, ECF 44.

This Court finds Plaintiffs' "failure to mitigate damages" claim fails as a matter of law. Failure to mitigate damages is a concept in contract law concerning party conduct. *See* Restatement (Second) of Contracts § 350 (1981) ("As a general rule, a party cannot recover damages for loss that he could have avoided by reasonable efforts. . . . It is sometimes said that it is the 'duty' of the aggrieved party to mitigate damages . . . ."). This Court has located no authority suggesting that failure to mitigate damages is an independent claim under Oregon law. Rather, the duty to mitigate damages is a common affirmative defense in contract law. *See, e.g., U.S. Nat. Bank of Or. v. Homeland, Inc.*, 291 Or. 374, 378–84 (1981) (discussing lessor's obligations to mitigate damages); *Cardinell Crest Homeowners Ass'n v. Lord*, 160 Or. App. 452, 461 (1999) ("[T]he general rule is that a party injured by breach of contract must mitigate his or her damages."). Therefore, Defendant is entitled to summary judgment on Plaintiffs' failure to mitigate damages claim.

### D.  Breach of Fiduciary Duty Claim

Plaintiffs allege that Defendant "act[ed] as a fiduciary for Plaintiffs by negotiating their property damage claim, orchestrating repairs, and acting as agent on their behalf." SAC, ECF 27 ¶ 40. Plaintiffs allege that through the contractual breach, Defendant "also breached their fiduciary duty to Plaintiffs," causing Plaintiffs to "suffer[] damages in the form of mental anguish, pain, and suffering, and out of pocket losses." *Id.* ¶¶ 41–42.

Under Oregon law, "[t]he elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty between the parties; (2) a breach of duty arising from that relationship; and (3) identifiable loss or injury caused by the breach." *Miller v. Olsen*, No. 3:15-cv-00571-AC, 2016 WL 4154936, at *6 (D. Or. Aug. 4, 2016) (citing *Lindland v. United Bus. Invs., Inc.*, 298 Or. 318, 327 (1984)). "Without some special relationship between parties, no fiduciary duty exists." *Gangnes v. Lang*, 104 Or. App. 135, 140 (1990).

"To establish a fiduciary relationship, the parties must have a special relationship in which the 'nature of the parties' relationship itself allows one party to exercise control in the first party's best interests.'" *BAC Home Loans Servicing, LP v. Hackett*, No. 3:11-cv-00416-HZ, 2013 WL 5636714, at *5 (D. Or. Oct. 11, 2013) (quoting *Bennett v. Farmers Ins. Co. of Or.*, 26 P.3d 785, 799 (Or. 2001)). For a fiduciary relationship, "there must be some standard of care apart from those imposed by a loan agreement or contract." *Smith v. U.S. Bank, N.A.*, No. CIV. 10-3077-CL, 2011 WL 2470100, at *13 (D. Or. Apr. 22, 2011), *report and recommendation adopted*, No. 1:10-cv-03077-CL, 2011 WL 2469729 (D. Or. June 20, 2011) (finding no fiduciary relationship between a lending institution and its borrower-client).

Defendant argues it is entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim because there is not a fiduciary relationship between Plaintiffs and SunPoint. MSJ,

PAGE 19 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ECF 36 at 2, 14–15. In the context of liability *insurers*, Oregon law does recognize a special relationship because "[t]he insured relinquishes control over the defense of the claim asserted." *Georgetown Realty, Inc. v. Home Ins. Co.*, 313 Or. 97, 110 (1992). Here, Plaintiffs never assigned their insurance claim to Defendant. *See* Elkington Decl., Ex. 5, ECF 38-5 at 2. Plaintiffs hired SunPoint to assist with maximizing recovery from their claim. The relationship between Plaintiffs and Defendant arose with the contract, and a fiduciary duty demands obligations "*apart* from those imposed by a . . . contract." *Smith*, 2011 WL 2470100, at *13 (emphasis added). Nothing else in the record supports a "special relationship" where Defendant "exercise[d] control in [Plaintiffs'] best interests." *Hackett*, 2013 WL 5636714, at *5 (citation modified). Defendant never managed Plaintiffs' funds, for instance. Liberty Mutual wrote payments only to Plaintiffs, Plaintiffs' mortgage company, and associated vendors. JSOF, ECF 53 at 3–5. Defendant "never assumed control over, nor deposited, nor cashed any of Plaintiffs' insurance claim proceeds." *Id.* at 5. This Court does not find a fiduciary relationship between the parties, and thus, Defendant is entitled to summary judgment on Plaintiffs' breach of fiduciary duty claim.

## CONCLUSION

Defendant's Motion for Summary Judgment, ECF 36, is GRANTED.

**IT IS SO ORDERED.**

DATED this 23rd day of March, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 20 – OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT